IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: | CASE NO. 8:14CV322 |
| RANDY S. RICKER and PAULA D. RICKER, | Bankruptcy Case No. 08-83110 (Chapter 7) |
| Debtors. | |
| THOMAS D. STALNAKER, Trustee of the Randy S. and Paula D. Ricker Chapter 7 Bankruptcy Estate, | Adversary Proceeding No. 11-08098 |
| Plaintiff/Appellant, | |
| v. | |
| COMPUTERSHARE TRUST COMPANY, INC., | |
| Defendant/Appellee. | |

**MEMORANDUM AND ORDER**

Thomas D. Stalnaker, trustee for the bankruptcy estate of Randy S. and Paula D. Ricker, appeals from a final judgment entered by the bankruptcy court on September 22, 2014 (Bankruptcy Court Filing 74), which dismissed with prejudice all claims alleged by the trustee in an adversary proceeding brought against Computershare Trust Company, Inc. The bankruptcy court granted Computershare's motion for summary judgment and denied the trustee's motion for partial summary judgment. Having carefully reviewed the parties' briefs and the designated record on appeal,[1] I conclude that the bankruptcy court's judgment should be affirmed.

---

[1] I find that oral argument is not needed because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. *See* Bankruptcy Rule 8019(b)(3).

*Standard of Review*

In bankruptcy proceedings, the district court acts as an appellate court and applies the same standard of review as the court of appeals. *See [Contemporary Industries Corp. v. Frost](), 564 F.3d 981, 984 8th Cir. 2009)*. The court reviews the bankruptcy court's grant of summary judgment de novo. *See [Ritchie Capital Management, LLC v. Stoebner](), 779 F.3d 857, 860 (8th Cir. 2015)*. A choice of law determination is also reviewed de novo. *[Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.](), 111 F.3d 1386, 1392 (8th Cir. 1997)*.

"Summary judgment was properly granted if, assuming all reasonable inferences favorable to the non-moving party, there is no genuine [dispute] as to any material fact and the moving party is entitled to judgment as a matter of law. Where [as here] the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *[Ritchie Capital Mgmt.](), 779 F. 3d at 861* (quoting *[In re Cochrane](), 124 F.3d 978, 981-82 (8th Cir. 1997)*).

*Background*

The Rickers, who are Nebraska residents, filed their Chapter 7 petition in the United States Bankruptcy Court for the District of Nebraska on December 2, 2008. It is claimed they were forced into bankruptcy after Computershare, a transfer agent for Reclamation Consulting and Applications, Inc. ("RCAI"), refused to deliver unrestricted shares of RCAI stock they had purchased for themselves and others. Computershare and RCAI are both Colorado corporations.

The trustee filed a complaint against Computershare in the bankruptcy court on October 7, 2011, alleging common law claims for conversion, breach of fiduciary duty, and tortious interference with business relationship and expectancy, as well as a federal claim for securities fraud. Damages in excess of $2 million are alleged.

Computershare moved for summary judgment on February 12, 2014, asserting that the common law claims have been displaced by the Uniform Commercial Code, and that the federal claim is barred by the statute of limitations. Computershare further asserted that any UCC claim would barred by a 3-year statute of limitations under Colorado law (as opposed to a 4-year statute of limitations under Nebraska law). The trustee filed a motion for partial summary judgment on the conversion claim on March 26, 2014.

In a memorandum and order entered on September 22, 2014, the bankruptcy court applied Nebraska choice of law rules and determined that the trustee's common law claims are substantively based on Colorado law. The court reached this conclusion after weighing the factors set forth in Restatement (Second) of Conflicts of Laws §§ 6 and 145. The court then ruled that the common law claims have been displaced by the UCC's Article 8 ("Investment Securities"), Part 4 ("Registration"), and stated that amending the complaint to allege a UCC violation would be futile because all actions arising under the UCC in Colorado must be filed within 3 years after the cause of action accrues. Applying a discovery rule, the court found that the claims had accrued, at the latest, on June 19, 2008, by which time Computershare had denied requests for delivery of all stock certificates at issue. The court held that subsequent demands for delivery of the same certificates were immaterial because Colorado does not recognize the continuing tort doctrine in the context of UCC claims. With regard to the federal securities fraud claim, the bankruptcy court ruled that a 2-year statute of limitations also commenced running no later than June 19, 2008.

On appeal, the trustee argues that (1) Nebraska substantive law governs the common law claims because Nebraska has a more significant relationship to this controversy than Colorado, and Nebraska's interests outweigh those of Colorado; (2) under Neb. Rev. Stat. § 25-3203(2), Nebraska's 4-year statute of limitations applies; (3) the statute of limitations did not begin to run until sometime after October 7, 2008; (4) the continuing tort doctrine applies; (5) the federal securities fraud claim did not accrue before December 2009; and (6) summary judgment should be entered against

Computershare on the conversion claim. In his reply brief, the trustee denies that the UCC applies to any claims and asserts that (1) the Rickers did not request a transfer of shares and (2) Computershare was not acting as a transfer agent.

## *Discussion*

The bankruptcy court found that "by alleging common law claims – breach of fiduciary duty, conversion and tortious interference with business relationship/ expectancy – the Trustee is seeking a remedy for Computershare's alleged failure to promptly transfer RCAI shares to Ricker" (bankruptcy court filing 72, at p. 13), and it concluded that these common law claims are displaced[2] by Section 8-401 of the Uniform Commercial Code, which provides:

> (a) If a certificated security[3] in registered form[4] is presented to an issuer with a request to register transfer ..., the issuer shall register the transfer as requested if ... [seven listed preconditions exist].

---

[2] "Unless displaced by the particular provisions of [the Uniform Commercial Code], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause supplement its provisions." Neb. Rev. Stat. U.C.C. § 1-103(b); Colo. Rev. Stat. § 4-1-103(b).

[3] "Certificated security" means a security that is represented by a certificate. Neb. Rev. Stat. U.C.C. § 8-102(a)(4); Colo. Rev. Stat. § 4-8-102(a)(4).

[4] "Registered form," as applied to a certificated security, means a form in which:

> (i) the security certificate specifies a person entitled to the security; and
> (ii) a transfer of the security may be registered upon books maintained for that purpose by or on behalf of the issuer, or the security certificate so states.

Neb. Rev. Stat. U.C.C. § 8-102(a)(13); Colo. Rev. Stat. § 4-8-102(a)(13).

> (b) If an issuer is under a duty to register a transfer of a security, the issuer is liable to a person presenting a certificated security ... for loss resulting from unreasonable delay in registration or failure or refusal to register the transfer.

Neb. Rev. Stat. U.C.C. § 8-401; Colo. Rev. Stat. § 4-8-401. Although Computershare is not an "issuer," *see* Neb. Rev. Stat. U.C.C. § 8-201 (defining "issuer"); Colo. Rev. Stat. § 4-8-201 (same), "[a] person acting as authenticating trustee, transfer agent, registrar, or other agent for an issuer in the registration of a transfer of its securities, [or] in the issue of new security certificates or uncertificated securities, ... has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions." Neb. Rev. Stat. U.C.C. § 8-407; Colo. Rev. Stat. § 4-8-407.

The Rickers deny that they ever requested Computershare to transfer any shares, and argue that they "only made a request for Computershare to provide them the certificates for the shares they already owned" (Filing No. 9, at CM/ECF p. 6). Randy Ricker states in an affidavit, however, that between January 23, 2003, and June 19, 2008, he "made written demand upon Computershare for the unrestricted issuance of" several stock certificates (Bankruptcy Court Filing No. 48, ¶¶ 10-31). One of the preconditions for registration of a transfer under U.C.C. § 8-401 is that "the transfer does not violate any restriction on transfer imposed by the issuer in accordance with section 8-204." Neb. Rev. Stat. U.C.C. § 8-401(a)(5); Colo. Rev. Stat. § 4-8-401(a)(5).[5]

There is a split of authority on the question of whether a request for the issuance of an unrestricted certificate is covered by U.C.C. § 8-401. *Compare, e.g., Guilfoyle*

---

[5] "A restriction on transfer of a certificated security is ineffective against a person without knowledge of the restriction unless the restriction is noted conspicuously on the certificate.... Refusal by an issuer to register a transfer on the basis of an unnoted restriction would be a violation of the issuer's duty to register under Section 8-401." U.C.C. § 8-204, comment 2.

*v. Olde Monmouth Stock Transfer Co., Inc.*, 335 P.3d 190, 195 (Nev. 2014) (recognizing that § 8-401 "can apply to legend removal requests"); *In re Marriage of Devick*, 735 N.E.2d 153, 160 (Ill.App.Ct. 2000) (concluding that "section 8-401 of the UCC is applicable to the imposition of restrictive legends on stock certificates"); *Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986) (holding that "it is reasonable to construe the term 'register the transfer,' as used in § 8-401 of the UCC, to include those ministerial acts that normally accompany such registration"), *with, e.g.*, *Midwest Inv. Partners, LLC v. Standard Metals Processing, Inc.*, No. 3:14CV38, 2015 WL 566942, at *3 (S.D.Ind. Feb. 11, 2015) ("If Indiana's legislature aimed to create a judicial forum for compelling removal of restrictive legends, it very simply could have included that language in the statute."); *Steranko v. Inforex, Inc.*, 362 N.E.2d 222, 236 (Mass.App.Ct. 1977) ("[W]e do not agree that the bank's refusal to remove the restrictive legends from Steranko's shares qualifies as a refusal to 'register a transfer' under the terms of section 8-401(2).").

The Nebraska Supreme Court has not addressed this issue, but the Colorado Supreme Court has held that U.C.C. § 8-401 is applicable because "[a] request by a registered owner and his transferee to issue a new security certificate specifying the transferee as the person entitled to the security therefore implicitly includes, or in effect amounts to, a request to register the transfer." *Clancy Systems Intern., Inc. v. Salazar*, 177 P.3d 1235, 1236 (Colo. 2008); *see also Ajjarapu v. AE Biofuels, Inc.*, 728 F.Supp.2d 1154, 1164 (D.Colo. 2010) (following *Clancy Sys. Int'l* in case involving transfer agent's failure to remove restrictive legend); *American Securities Transfer, Inc. v. Pantheon Industries, Inc.*, 871 F.Supp. 400, 404 (D.Colo.1994) (transfer agent had duty under Colo. Rev. Stat. § 4-8-401 to honor request for removal of restrictive legend from stock certificate).[6]

---

[6] The trustee's additional argument that Computershare was not acting as a transfer agent because RCAI allegedly was a sham corporation requires no discussion, other than to state that the shares were issued by RCAI.

If, as found by the bankruptcy court, Colorado substantive law applies in this case, then all of the common law claims alleged by the trustee are preempted by the Uniform Commercial Code. *See Clancy Sys. Int'l*, 177 P.3d at 1236 (holding that Colo. Rev. Stat. § 4-8-401 "not only imposes liability on an issuer of securities for loss resulting from its unreasonable delay in removing a restrictive legend from a reissued certificate, but also displaces common law remedies for the same loss"); *Ajjarapu*, 728 F.Supp.2d at 1164 (under Colorado law, U.C.C. § 8-401(b) displaced plaintiffs' common law tort claims of conversion and breach of fiduciary duty for issuer's refusal to reissue plaintiffs' shares without restrictive legend). I conclude that the bankruptcy court properly analyzed the choice-of-law question, and that little additional discussion is required.

As the bankruptcy court correctly recognized, "[t]he bankruptcy court applies the choice of law rules of the state in which it sits." *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000). The Nebraska Supreme Court applies the Restatement's "most significant relationship" test to determine the applicable law for tort claims. *See Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 772-73 (Neb. 2009); Restatement (Second) of Conflict of Laws §§ 6 and 145. I find no fault with the bankruptcy court's assessment of the relevant contacts under § 145, or the choice-of-law principles stated in § 6, to conclude that Colorado law should apply. In particular, I note, as did the bankruptcy court, that the Uniform Commercial Code's Article 8 choice-of-law provision specifies that "[t]he local law of the issuer's jurisdiction ... governs ... the rights and duties of the issuer with respect to registration of transfer ...." Neb. Rev. Stat. U.C.C. § 8-110(a)(2); Colo. Rev. Stat. § 4-8-110(a)(2). "The principal policy reflected in the choice of law rules in subsection (a) [of section 8-110] is that an issuer and others should be able to look to a single body of law on the matters specified in subsection (a), rather than having to look to the law of all of the different jurisdictions in which security holders may reside." U.C.C. § 8-110, comment 2.

Nebraska has adopted a version of the Uniform Conflict of Laws Limitations Act ("UCLLA"), Neb. Rev. Stat. §§ 25-3201 to 25-3207, which applies to claims

accruing after July 14, 2006. The Act contains a "borrowing statute" which generally provides that if, as in this case, "a claim is substantively based ... [u]pon the law of one other state, the limitation period of that state applies ...." Neb. Rev. Stat. § 25-3203(1)(a)(i). There are only two exceptions to this general rule: First, "[i]f the court determines that the limitation period of another state applicable under section 25-3203 ... is substantially different from the limitation period of [Nebraska] and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against, the claim, the limitation period of [Nebraska] applies." Neb. Rev. Stat. § 25-3205. The trustee does not rely upon this exception. Second, "[i]f a cause of action arises outside of [Nebraska] and the action is barred under the applicable statute of limitations of the place where it arose, the action may be maintained in [Nebraska] if the plaintiff is a resident of [Nebraska] who has owned the cause of action since it accrued and the cause of action is not barred under the applicable statute of limitations of [Nebraska]." Neb. Rev. Stat. § 25-3203(2). Although the trustee now claims the benefit of this "resident plaintiff" exception, no such argument was made before the bankruptcy court in response to Computershare's motion for summary judgment. However, the bankruptcy court made an express finding that § 25-3203(2) is "inapplicable because the [bankruptcy] estate has not owned the causes of action since they accrued" (Bankruptcy Court Filing No. 72, at p. 12, n. 9).

Computershare contends the trustee waived the argument by failing to raise it before the bankruptcy court. Among the cases cited by Computershare is *First Bank Investors' Trust v. Tarkio College*, 129 F.3d 471 (8th Cir. 1997), in which the Court of Appeals affirmed a district court ruling that a creditor's alternative claim for interest was foreclosed on appeal due to the creditor's failure to raise the argument during the bankruptcy proceedings and it had not addressed by the bankruptcy court. After noting that the stating the general rule that an appellate court "will not consider issues not presented to the bankruptcy court in the first instance," the Eighth Circuit stated that an issue may be considered for the first time on appeal "when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case, or where manifest injustice might otherwise result." *Id.* at 477

-8-

(citations omitted). Because the applicability of § 25-3203(2) involves a purely legal issue that was raised by the bankruptcy court *sua sponte*,[7] I believe the issue is properly presented on appeal.

With the filing of the Chapter 7 petition, any choses of action belonging to the Rickers became the property of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1); *In re Mehlhaff* 491 B.R. 898, 902 (8th Cir. BAP 2013) ("Section 541(a) includes causes of action existing at the time of the commencement of the bankruptcy case."). "And, upon the filing of a bankruptcy petition, the trustee steps into the debtor's shoes and takes whatever interests the debtor has on the petition date." *Id.*

The trustee contends "[t]his action was brought on the Rickers' behalf" (Filing No. 7, at CM/ECF p. 20), but this is not true. Although "[t]he trustee steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of action," the causes of action "become property of the estate." *In re B.J. McAdams, Inc.*, 66 F.3d 931, 935 (8th Cir. 1995) (quoting *In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 901 (1st Cir. 1988)). "[O]nce a bankruptcy petition is filed, the debtor loses standing to pursue any cause of action which accrued prior to the bankruptcy filing." *Forrest v. Eilenstine*, 554 N.W.2d 802, 807 (Neb.App. 1996). In short, there is a change in ownership of the causes of action for purposes of Neb. Rev. Stat. § 25-3203(2). Under § 25-2303(1), therefore, a claim alleged under Colo. Rev. Stat. § 4-8-401 would be barred by a 3-year statute of limitations. *See* Colo. Rev. Stat. § 13-80-101(1)(a).

The trustee next argues that the tort claims did not accrue until at least three years before this action was filed on October 7, 2011. As discussed by the bankruptcy court, the evidence conclusively establishes that all claims accrued no later than June 19, 2008. The trustee also argues that the running of the statute of limitations was

---

[7] While the trustee did not claim the benefit of the "resident plaintiff" exception, neither did Computershare reference the UCLLA in support of its argument before the bankruptcy court the Colorado statute of limitations applies.

tolled by the continuing tort doctrine, but Colorado limits the application of this doctrine to employment cases. *See Tara Woods Ltd. Partnership v. Fannie Mae*, 731 F.Supp.2d 1103, 1120 (D.Colo. 2010); *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo.App. 2000). It clearly has no application to the non-pleaded U.C.C. claim. Finally, the trustee argues that the federal securities law claim did not accrue until December 2009 (about a year after the petition in bankruptcy was filed). There is not sufficient evidence to support this claim. To the contrary, as found by the bankruptcy court, a reasonably diligent plaintiff would have discovered the facts constituting the alleged violation no later than June 2008. The claim is therefore barred by the 2-year statute of limitations. *See* 28 U.S.C. § 1658(b)(1).

### *Conclusion*

All tort claims alleged by the trustee are displaced by the Uniform Commercial Code, and a claim brought under U.C.C. § 8-401 would be barred by the applicable statute of limitations. The federal securities law claim is also time-barred.

Accordingly,

IT IS ORDERED that the bankruptcy court's judgment (Bankruptcy Court Filing 74) is affirmed. Judgment shall be entered by separate document.

July 21, 2015.                BY THE COURT:

                                           s/ *Richard G. Kopf*
                                           Senior United States District Judge

---

    \*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.